[Crim. No. 1286. Second Appellate District, Division One.—June 22, 1926.]

## THE PEOPLE, Respondent, v. PARKER SINGH, Appellant.

[1] CRIMINAL LAW—MURDER—CONTINUANCE OF TRIAL—DISCRETION.— In this prosecution for murder, the trial court did not abuse its discretion in denying defendant's motion for a continuance of the date of trial.

[2] ID.—CONTINUANCE—DISCRETION—APPEAL.—Although as a general proposition considerable indulgence and liberality should be exercised, the granting of a continuance is a matter which rests in the sound discretion of the trial court, whose decision will not be disturbed unless it very clearly appears that such discretion has been abused.

[3] ID.—INDISPOSITION OF DEFENDANT—CONTINUANCE—EVIDENCE—PRESUMPTIONS.—In such prosecution, defendant's complaint that the trial court improperly refused to grant a motion for continuance made during the trial of the action on the ground that defendant was ill and could not be consulted by his counsel cannot be upheld, where the record shows that on such suggestion being made by defendant's counsel, an adjournment of court was had until the following day, at which time, so far as appearances as disclosed by the transcript are concerned, defendant had recovered from his indisposition and was able to advise with his counsel, and no renewal of the motion was made, and it must be presumed that defendant suffered no hardship from the course pursued by the court.

[4] ID.—JURIES AND JURORS—DENIAL OF CHALLENGES—ABSENCE OF ERROR.—In such prosecution, the trial court did not err in denying each of two challenges interposed by defendant to jurors who were sworn to try the cause.

[5] ID.—CHANGE OF VENUE—ORAL MOTION—PROPER DENIAL OF.—In such prosecution, the trial court properly denied an oral motion made by defendant for change of venue on the ground that fifty-two veniremen had been excused for cause, and, therefore, that it was apparent that defendant could not have a fair trial.

2. See 5 Cal. Jur. 968; 6 R. C. L. 544.
3. See 5 Cal. Jur. 980.
5. See 7 Cal. Jur. 918.

[6] Id.—Scene of Shooting—Photographs—Evidence.—In such prosecution, the admission of photographs of the scene of the shooting taken two days later, which photographs were intended merely for the purpose of illustrating the conditions present at the time in question, was not error.

[7] Id.—Interrogation of Witness—Record.—In such prosecution, defendant cannot justly complain that the trial court refused to permit him to interrogate a witness for the prosecution as to whether he had seen the shot fired by defendant or had heard such shot only, where the record shows that the witness was elsewhere fully examined by defendant's counsel with reference to such point.

[8] Id.—Attack on Third Person After Killing—Evidence—Absence of Prejudicial Error.—In such prosecution, the action of the trial court in permitting evidence of an attack by defendant on a third person after the killing in question was not prejudicial to defendant.

[9] Id.—Evidence—Other Crimes.—The general rule is that evidence of commission of offenses other than those charged in the information or indictment is inadmissible.

[10] Id.—Evidence.—In such prosecution, the defendant was not harmed by the action of the trial court in not permitting answers to questions asked by defendant of prosecution witnesses, where the matters embraced in the questions were elsewhere fully covered.

[11] Id.—Statements of Defendant—Admissibility of.—In such prosecution, the substance of a conversation between a witness and defendant in which defendant was alleged to have said that he "was not crazy," but that he was "just mad," was admissible as an admission against interest which the jury had a right to take into consideration in making up its verdict.

[12] Id.—Statements of Defendant—Voluntary Character of—Evidence—Waiver.—In such prosecution, defendant is in no position to complain that a sufficient foundation was not laid for admitting certain statements made by defendant, in that it was not shown that defendant was not under either coercion or duress, nor that such statements were made freely and voluntarily, where defendant waived the right to correct the answers given by the witnesses either through the medium of objection to questions, by examination of the witnesses on *voir dire,* or through the ordinary channel of cross-examination.

---

6.  See 8 Cal. Jur. 136.
8.  See 8 Cal. Jur. 60.
9.  See 8 Cal. Jur. 58; 8 R. C. L. 198.
10.  See 8 Cal. Jur. 619.

[13] ID.—ADMISSIONS—CONFESSIONS.—In such prosecution, where certain statements made by defendant were only in the nature of admissions, no foundation of the nature of that required for the admission in evidence of a confession was necessary.

[14] ID.—OCCURRENCE OF CONVERSATION—TIME—STATEMENT OF WITNESS.—In such prosecution, defendant was not seriously harmed because one of the witnesses in the course of the testimony given by him referred to a certain conversation between him and defendant as having occurred on "the night of the murder."

[15] ID.—ARGUMENT—MISCONDUCT.—In such prosecution, the statements of the district attorney in his argument to the jury did not constitute prejudicial error, where everything said by the district attorney to which exception was taken was before the jury, at least by inference.

---

(1) 16 C. J., p. 454, n. 37, p. 494, n. 73, p. 508, n. 75; 17 C. J., p. 235, n. 91. (2) 16 C. J., p. 451, n. 91, p. 453, n. 4; 17 C. J., p. 233, n. 83. (3) 16 C. J., p. 457, n. 61; 17 C. J., p. 234, n. 87. (4) 17 C. J., p. 238, n. 23, p. 292, n. 41. (5) 16 C. J., p. 209, n. 13. (6) 16 C. J., p. 745, n. 18. (7) 40 Cyc., p. 2519, n. 88. (8) 30 C. J., p. 205, n. 87. (9) 16 C. J., p. 586, n. 98; 17 C. J., p. 358, n. 52. (10) 17 C. J., p. 313, n. 47. (11) 16 C. J., p. 626, n. 80. (12) 17 C. J., p. 56, n. 16. (13) 16 C. J., p. 629, n. 21. (14) 17 C. J., p. 333, n. 78. (15) 16 C. J., p. 905, n. 74.

APPEAL from a judgment of the Superior Court of Imperial County and from an order denying a new trial. Franklin J. Cole, Judge. Affirmed.

The facts are stated in the opinion of the court.

Edgar B. Hervey and O. V. Willson for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, Ernest R. Utley, District Attorney, and Lee Nuffer, Deputy District Attorney, for Respondent.

HOUSER, J.—Defendant appeals from a judgment of conviction of murder in the second degree and from an order denying his motion for a new trial.

Very briefly, from the evidence adduced at the trial, it appears that defendant had charge of the growing of a crop

---

13. See 8 Cal. Jur. 100.
14. See 8 Cal. Jur. 621.

of lettuce on a large ranch belonging to a man named Victor R. Sterling, who was receiving financial assistance in the enterprise from one John B. Hager, in whose employ was a man by the name of William R. Thornberg. On March 31, 1925, some controversy occurred between defendant on the one side and Hager and Thornberg on the other regarding some detail of the work of harvesting the crop of lettuce. The next day Hager and Sterling had some further conversation and apparent difficulty with defendant, following which defendant fired a pistol at Sterling, who attempted to escape by running away, but who was pursued by defendant and by him killed by a second shot from the pistol near the place where the first shooting occurred. Defendant then ran after and overtook Hager, whom he also killed by shooting him with the pistol. Defendant then took an ax and with it crushed the heads of both Sterling and Hager. Immediately thereafter defendant drove a distance of five or six miles to a town where Thornberg was employed, and made an unsuccessful attempt to kill him by shooting him with the same pistol.

[1] The first assignment of prejudicial error by appellant is that of the denial by the lower court of defendant's motion for a continuance of the date of trial. From the affidavits (which include one made by defendant) filed in support of such motion, it appears that the principal defense upon which defendant expected to rely for an acquittal of the charge of murder which had been preferred against him was that of insanity; that he was a native of India, where his close relatives and most of his friends resided; that by the testimony only of such relatives and friends (proposed to be taken by deposition) would defendant be able to establish certain facts, including the life history and family history of defendant; that the father of defendant was afflicted with epilepsy (which it is alleged is a form of insanity); and that in a fit of insanity a brother of defendant had killed two or three named persons—all of which facts, together with the circumstances surrounding the killing of Sterling and Hager, were to be used as a foundation for an opinion or opinions as to the sanity of defendant, to be given through the testimony of alienists to be introduced by defendant on the trial of the action.

Defendant was arrested for the commission of the crime of which he was convicted on the same day on which the offense was committed. Five days thereafter he was indicted by the grand jury and on his arraignment his trial was set at a date exactly two months after the date of the commission of the crime. It appears that on at least one occasion, approximately one month before the date of the trial, counsel for defendant stated to the judge of the trial court that he had "a motion to make in the above-entitled case, . . . ; that he was sure his motion would be granted and that the above-entitled case would not be tried on June 1, 1925''—the date set for the hearing of the action.

So far as the record discloses, prior to the date of the trial, no motion other than that for a continuance was ever presented to the lower court; from which fact it may be deduced that the motion to which defendant's counsel referred was the one now under consideration. No affidavit is presented by an alienist that the facts which were expected to be proved by the witnesses testifying by deposition, together with the facts testified on the trial, would have resulted in the expression of an opinion that defendant was insane; nor is there any intimation by any such proposed expert witness that the evidence of the facts that defendant's father was afflicted with epilepsy and that defendant's brother in a fit of insanity had slain three persons, in any way would have affected the determination of the question whether defendant was insane at the time when it is charged that he committed the offense set forth in the indictment. Notwithstanding allegations in the affidavits presented by defendant in support of the motion for a continuance of the date of trial, to the effect that counsel for defendant became acquainted with the facts relative to said family history of the defendant at a time within one week of the date of the presentation of the motion—from the fact, as appears from the affidavits, that counsel for defendant had been in constant communication with defendant ever since the day of his arrest and consequently might have learned at a comparatively early date of the existence of the facts relative to defendant's said family history, together with the additional fact that approximately one month before the date of trial counsel for defendant had indicated that he would make a motion for a continuance—the judge of the

trial court was authorized to determine that such motion when presented was not made in good faith and that defendant had not exercised due diligence in presenting it.

The motion for a continuance of the date of trial was also based upon certain facts which tended to show the impracticability of locating the witnesses who were present at the scene of the shooting when the crime was committed. Counter-affidavits disclosed the ease with which the prosecution had arranged for the attendance at the trial of each of twelve witnesses whose names, in accordance with the provision of the statute, were indorsed on the indictment and also showed the practicability of discovering the whereabouts of any other persons who were either present at, or in the vicinity of, the scene of the tragedy at the time of the commission of the offense. .

[2] The law appears to be well established that, although as a general proposition considerable indulgence and liberality should be exercised, the granting of a continuance is a matter which rests in the sound discretion of the trial court, whose decision will not be disturbed unless it very clearly appears that such discretion has been abused. (5 Cal. Jur. 968–970, and cases there cited.)

In the case of *People* v. *Collins,* 195 Cal. 325 [233 Pac. 97], it is said: "It is a settled rule of practice that an application for a continuance is addressed to the sound discretion of the trial court, and its rulings will not be reviewed except for the most cogent reasons. The trial court is apprised of all the circumstances of the case and the previous proceedings, and is, therefore, better able to decide upon the propriety of granting the application than an appellate court; and when it exercises a reasonable, and not an arbitrary discretion, its action will not be disturbed. . . . "

An examination of several affidavits presented to the trial court and appearing in the record herein fails to convince this court that any such abuse of discretion by the trial court is shown in its order in denying the motion.

[3] Appellant further complains of the refusal of the court to grant a motion for continuance made during the trial of the action on the ground that defendant was ill and could not be consulted by his counsel. The record on appeal, however, satisfactorily shows that on such suggestion being made by counsel for defendant, an adjournment of

court was had until the following day, at which time, so far as appearances as disclosed by the transcript are concerned, defendant had recovered from his indisposition and was able to advise with his counsel. At any rate, no renewal of the motion was made, and it must be presumed that defendant suffered no hardship from the course pursued by the court.

[4] Objection is also registered by appellant because of the denial by the court of each of two challenges interposed by defendant to jurors who were sworn to try the cause. Although from a reading of certain parts of the examination of each of such jurors it would appear that there might be some question of his openness of mind toward defendant and his proposed defense of insanity, the concluding portion of such examination would clearly indicate that such juror would follow the instructions of the court with reference to any defense which might be presented by defendant, and that he would accord to him a fair and impartial hearing on the merits of his case.

As a matter of fact, no evidence was introduced in behalf of defendant, and the defense of insanity was an issue in the case to the extent only that it was an arguable question arising solely from such inferences as might be deducible from facts presented by the prosecution, which, in the very nature of circumstances of the character of those surrounding the case, were exceedingly meager from a standpoint of actually establishing anything upon which a jury would be justified in reaching a conclusion in accordance with defendant's contention. Because of the discretion concededly vested in the trial court to determine the question of the fitness of a juror to serve; because no abuse of such discretion is apparent; and because, viewed from a practical standpoint, no harm resulted to defendant by reason of the action of the court in the premises,—it must be concluded that appellant's position is unsustainable.

[5] Appellant complains of the action of the court in that after more than eighty veniremen had been examined touching their qualifications to serve as trial jurors in the cause, and after defendant had exercised all the peremptory challenges allowed him by the statute, the trial court denied an oral motion made by defendant for change of venue on the ground that fifty-two veniremen had been excused for

cause, and, therefore, that it was apparent that defendant could not have a fair trial. No authorities are cited by appellant to sustain his position. On the other hand, the statute (sec. 1034, Pen. Code) applicable to motions for change of venue, provides in part that such a motion must be made in writing, verified by the affidavit of the defendant, and a copy thereof served on the district attorney at least one day prior to the day of application. In·the case of *People* v. *Nolan*, 34 Cal. App. 545 [167 Pac. 642], it is held that where such a motion is made orally and without the affidavit for which the statute provides, no error is committed by the court in denying the motion. (See, also, *People* v. *McGarvey*, 56 Cal. 327.) We are therefore unable to agree with appellant in his contention.

[6] It is next urged by appellant that the trial court erred to defendant's prejudice in admitting certain photographs in evidence over· defendant's objection, for the reason that while the shooting occurred on April 1, 1925, the photographs of the scene thereof were not taken until two days later, and no foundation for the introduction of the photographs was laid by showing that the surroundings when the photographs were taken were identical therewith as of the time when the shooting took place.

From a reading of the evidence herein relating to the photographs, it is clear that no claim was made at any time, nor could it have been understood by the jury, that the photographs were exact representations of conditions prevailing at the time when and the place where the tragedy occurred. The photographs were intended (as maps or diagrams might be used) merely for the purpose of illustrating the conditions present at the time in question. We are of the opinion that so considered no error was committed by the trial court. (*People* v. *Crandall*, 125 Cal. 129, 133 [57 Pac. 785]; *People* v. *Phelan*, 123 Cal. 551 [56 Pac. 424]; *People* v. *Mahatch*, 148 Cal. 200 [82 Pac. 779]; *People* v. *Grill*, 151 Cal. 592 [91 Pac. 515]; and see generally 13 Cal. Jur. 710, 711.)

[7] Certain errors are also specified relating to the refusal of the trial court to permit counsel for defendant to interrogate one of the witnesses introduced by the prosecution as to whether he had seen the shot fired by defendant or had heard such shot only. An examination of the

reporter's transcript discloses the fact that the witness was elsewhere fully examined by defendant's counsel with reference to the point at issue. One question and answer will suffice: "Q. You heard the shot fired, but you didn't actually see him point the gun when he fired the shot, did you? A. I only heard the shot, was all."

It is therefore clear that appellant has no ground for complaint.

[8] Appellant also contends that prejudicial error was committed by the court in that, over objection by defendant, evidence was introduced which showed in substance that after defendant had killed Sterling and Hager, he went to the town of Calipatria and attempted to kill Thornberg. It appears that Hager was the manager of the Certified Fruit Company and that Thornberg was an employee thereof; that defendant regarded Hager and Thornberg as partners; that on three or four occasions on the afternoon of the day of the killing and preceding the assault made on Thornberg defendant drove his automobile very slowly past the business office in which Thornberg was employed—the defendant "looking into the office each time as he went by." Finally, in the words of Thornberg: "I was standing there, and I noticed Parker Singh (defendant) drive up in front of the office and cut straight across the street. He didn't go to the corner and turn around the button. He stepped out of the car and stepped up on the edge of the curb and said, 'God damn you, Thornberg, I am going to kill you,' and he pulled a gun out of his back pocket and I closed in on him, and he shot as I closed in on him."

[9] The general rule (with some exceptions) is that evidence of the commission of offenses other than those charged in the information or indictment is inadmissible. On the theory that evidence of the assault by defendant on Thornberg was directed toward the showing of malice, motive, or guilty intent on the part of defendant as affecting the crime of which he was charged, it is readily conceivable that such evidence might be admissible. (*People* v. *Selby*, 48 Cal. App. Dec. 148; *People* v. *Selby*, 198 Cal. 426 [245 Pac. 426].) The evidence in the instant case was convincing as to the guilt of defendant—in fact, no claim is presented by appellant to the contrary. Judging from the record before

this court, as hereinbefore indicated, the only defense suggested by defendant was that he was insane at the time the crime was committed. Such being the case, evidence that in addition to killing Sterling and Hager, defendant had also attacked Thornberg, far from being prejudicial to a defense of insanity, might be considered as supporting it. Indeed, if without provocation defendant had also assaulted or attempted to kill a dozen or more people, such a circumstance might have presented a sound basis for argument that the insanity of defendant was an established fact. Having in mind, therefore, the defense upon which defendant relied for an acquittal of the charge preferred against him, it is somewhat difficult to understand how or in what manner evidence of what from one viewpoint might be considered as an insane act on the part of defendant, could be prejudicial to his case. But, to adopt the language used by the supreme court of this state in the Selby case, 198 Cal. 426 [245 Pac. 426, 429], "in any event, even if it be assumed the rulings complained of were erroneous, we think that the errors were not sufficiently prejudicial to appellant to justify a reversal, in view of all the evidence in the case and that it tended to support his claim that he was insane."

[10] Appellant suggests a question of error in that defendant was not permitted to have answered a certain question which had been propounded to one of the witnesses introduced by the prosecution. An examination of the transcript of the record on appeal discloses the fact that no harm resulted to defendant by reason of such action of the court, for the reason that elsewhere in the cross-examination of such witness the matter embraced in defendant's question had been fully covered. From a practical standpoint, the same thing is true with reference to the additional specifications of error predicated upon the refusal of the trial court to permit a witness to answer a certain impeaching question which was put by defendant to one of the witnesses for the People. While the question might well have been answered, the situation which apparently was sought to be shown had been adequately presented through other testimony given by the same witness, with the result that no substantial injury was suffered by defendant from the action of the trial court.

[11] Appellant complains that defendant was prejudiced in his rights because the trial court denied his motion to strike out a part of an alleged conversation had between one of the witnesses and the defendant. The witness stated: "I don't remember now just all of it, but I remember him saying that he wasn't crazy. That is the first thing he said, that he wasn't crazy; that he was just mad."

We are unable to agree with appellant in his contention. The witness was attempting to give the substance of the conversation. If defendant made a statement that he "wasn't crazy," but that he was "just mad," it constituted an admission against interest which the jury had a right to take into consideration in making up its verdict.

[12] Appellant further contends that a sufficient foundation was not laid for admitting certain statements made by defendant, in that it was not shown that the defendant was not under either coercion or duress, nor that such several statements were made freely and voluntarily. But it appears that each of the several witnesses testified in exact terms covering the identical parts of the foundation which appellant suggests were lacking. If for any reason defendant was dissatisfied with the conclusive character of either the question or answer, the opportunity was open to him to correct such answers either through the medium of objection to such questions, by examination of the witnesses on *voir dire,* or through the ordinary channel of cross-examination. Having waived that right, he is in no position to complain. But, aside therefrom, it is not contended that the statements made by defendant amounted to confessions of guilt; but, to the contrary, that they were concededly only in the nature of admissions. [13] In such circumstances the rule appears to be well settled that no foundation of the nature of that required for the admission in evidence of a confession was necessary. (*People* v. *Parton,* 49 Cal. 632; *People* v. *Le Roy,* 65 Cal. 613 [4 Pac. 649]; *People* v. *Ammerman,* 118 Cal. 23 [50 Pac. 15].)

[14] Because one of the witnesses in the course of the testimony given by him referred to a certain conversation between him and defendant as having occurred on "the night of the murder," appellant feels aggrieved and specifies the refusal by the trial court to grant his motion to strike such remark from the record as prejudicial error.

While it may be that the court should have acceded to defendant's request in that regard, yet even though it may be assumed as error, considering the vast amount of evidence of defendant's guilt, the inference deducible from the remark to which reference has been had was of such small importance that we are constrained to hold that defendant's cause was not seriously affected thereby.

[15] Misconduct by the district attorney is specified as error by appellant in that in the course of the argument before the jury the district attorney used the following language:

"Mr. Hervey (attorney for defendant) says, 'Oh, gentlemen of the jury, if you have any blame don't blame the defendant, blame it on us.' I think there is plenty of blame and there is room for plenty of blame in this case and plenty of blame on him. Never before in all my life did I ever see an attorney question for days and days jurors and excuse jurors on some defense and then let it go glimmering by. By reason of their insanity plea, it was necessary for the prosecution, in order to be properly prepared in this case, to have alienist witnesses here, and other witnesses, and putting the county to a large expense by this insanity plea that—."

The record shows that timely objection thereto was made by counsel representing defendant; that misconduct was specified; and that the court declined to instruct the jury to disregard the remarks made by the district attorney to which we have referred. But assuming that appellant is right in his contention and that error was thus committed, when it is considered that everything said by the district attorney to which exception was taken was before the jury, at least by inference, it becomes difficult to understand how any damage to defendant's cause resulted because of such statement. At most, it cannot be said that either such error, nor any nor all of the errors committed in the course of the trial, resulted in a miscarriage of justice.

The judgment and the order denying motion for a new trial are affirmed.

Conrey, P. J., and York, J., concurred.