SHAW, P. J.
The defendants were prosecuted and found guilty by a jury on a charge that they did “wilfully and unlawfully and lewdly, in the City of Los Angeles, sell, distribute *961 and keep for sale an obscene and indecent book,” naming it, in violation of subdivision 3 of section 311 of the Penal Code. That section provides in part as follows:
“311. Every person who willfully and lewdly, either:
1. . . . ; or,
2. . . . ; or,
3. Writes, composes, stereotypes, prints, publishes, sells,
distributes, keeps for sale, or exhibits any obscene or indecent writing, paper, or book; ... ; or,
4. . . . ; or,
5. ... ", is guilty of a* misdemeanor. ”
On appeal defendants contend that the book is not obscene or indecent. A book is obscene “if it has a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desire.” (Commonwealth v. Isenstadt (1945), 318 Mass. 543 [62 N.E.2d 840, 844]; see, also, United States v. Dennett (1930), 39 F.2d 564, 568; Dunlop v. United States (1897), 165 U.S. 486, 501 [17 S.Ct. 375, 41 L.Ed. 799, 804].) The question whether any particular book is obscene or indecent is primarily one of fact, to be decided by the jury. Here the book was introduced in evidence as an exhibit, and the jury read it. We cannot upset their determination that it was obscene or indecent unless we can say that upon consideration of the book they cpuld not reasonably reach such a conclusion. (People v. Pesky (1930), 254 N.Y. 373 [173 N.E. 227].)
Since section 311, Penal Code, condemns the sale etc. of a book, rather than a part of a book, we agree with the contention that a book must be considered as a whole in determining whether this law is violated. On this subject we agree with these statements made in Commonwealth v. Isenstadt, supra (1945), 318 Mass. 543 [62 N.E.2d 840, 843, 844] : “It is not to be condemned merely because it may contain somewhere between its covers some expressions which, taken by themselves alone, might be obnoxious to the statute. Halsey v. New York Soc. for Suppression of Vice, 234 N.Y. 1, 4 [136 N.E. 219]; United States v. One Book Entitled ‘Ulysses’ (2 Cir.), 72 F.2d 705, 707; United States v. Levine (2 Cir.), 83 F.2d 156. But this does not mean that every page of the book must be of the character described in the statute before the statute can apply to the book. It could never have *962 been intended that obscene matter should escape proscription simply by joining to itself some innocent matter. A reasonable construction can be attained only by saying that the book is within the statute if it contains prohibited matter in such quantity or of such nature as to flavor the whole and impart to the whole any of the qualities mentioned in the statute, so that the book as a whole can fairly be described by any of the adjectives or descriptive expressions contained in the statute. The problem is to be solved, not by counting pages, but rather by considering the impressions likely to be created. For example, a book might be found to come within the prohibition of the statute although only a comparatively few passages contained matter objectionable according to the principles herein explained if that matter were such as to offer a strong salacious appeal and to cause the book to be bought and read on account of it.”
Examining the book in the light of these rules, we find ample support for the finding of the jury. Even were we to accept the reasoning of United States v. One Book Entitled “Ulysses” (C.C.A. 2d 1934), 72 F.2d 705, 707, urged upon us in argument, where the court said, “The erotic passages are submerged in the book as a whole and have little resultant effect,” we could not say that the jury were bound to come to any such conclusion in this case. However, we do not assent to everything said in that case, which appears to have gone to the extreme of liberality in its interpretation of the statute in favor of the book.
We find no error in the rulings excluding evidence offered by defendants on this point. The jury were competent to decide the question of the character of the book without resort to these adventitious aids. If the book sold by the defendants was in fact obscene, judged by its contents, it would not become any less so because other book dealers were selling it, or the public library had copies of it, or literary critics praised it as a work of literary merit, or because other books equally bad were being openly sold. (See Commonwealth v. Isenstadt, supra, at pp. 846, 848, 849 of 62 N.E.2d for discussion of some of these matters.) The fact that a book has literary merit does not prevent it from being obscene, if otherwise it has that character. (Halsey v. New York Soc. for Suppression of Vice (1922), 234 N.Y. 1 [136 N.E. 219]; Commonwealth v. Buckley (1909), 200 Mass. 346 [86 N.E. 910, *963 128 Am.St.Rep. 425, 22 L.R.A.N.S. 225].) It does not appear that the critics whose opinions were offered discussed the question of obscenity, but if they had done so it would have been proper to exclude the opinions because this was the very issue to be decided by the jury. (32 C.J.S. 74; Gardenswartz v. Equitable etc. Soc. (1937), 23 Cal.App.2d 745, 753 [68 P.2d 322]; People v. Crossan (1927), 87 Cal.App. 5, 16 [261 P. 531].)
The defendants further contend that the court erred in instructing the jury on the matter of intent and in excluding evidence regarding it, and that the evidence fails to show such intent as is necessary to constitute the offense charged. These contentions must be sustained. As already seen, section 311 of the Penal Code begins thus: “Every person who willfully and lewdly, either: . . .” Following this are five numbered subdivisions set off from each other by semicolons, with the word “or” following each semicolon, and at the end of the fifth subdivision, following a comma, are the words “is guilty of a misdemeanor” and a period. Each numbered subdivision begins with a verb and proceeds to describe one or more acts or courses of action. We are particularly concerned here with the part of subdivision 3 above quoted. With a section so worded and set up, the conclusion is inescapable that the introductory phrase above quoted applies to and governs each of the numbered subdivisions which follow it. Consequently, none of the acts described in these subdivisions is a crime unless it is done “willfully and lewdly.” In recognition of the correctness of this conclusion, the complaint charges that the sale of the book in question was so made. If authority for this plain conclusion is needed, it may be found in In re Correa (1918), 36 Cal.App. 512 [172 P. 615], There a complaint was filed attempting to charge a violation of subdivision 1 of section 311, but instead of using the introductory phrase above copied, the complaint charged merely that the acts described were done “willfully and unlawfully.” The court held this complaint bad because it failed to allege that the acts were done “lewdly,” and declared that “an essential element of the crime” was thus omitted.
The statute thus requires a specific intent, and in that respect it differs from those referred to in the cases from other jurisdictions above cited. In the same way it differs from our statutes prohibiting the sale of adulterated food *964 and drugs, with which respondent seeks to establish an analogy. No doubt the Legislature could, on the reasoning which justifies the pure food and other similar laws, adopt a statute prohibiting the sale of obscene books regardless of knowledge of their character or without any specific intent (see In re Marley (1946), 29 Cal.2d 525 [175 P.2d 832]; People v. Schwartz (1937), 28 Cal.App.2d Supp. 775 [70 P.2d 1017]); but the fact remains that it has not done so.
Consideration of the history of this prohibition in our legislation confirms our construction of section 311. Prior to the enactment of the Penal Code, the subject matter of subdivision 3 of section 311 was dealt with by a statute of 1859 (Stats. 1859, p. 297), which contained no words requiring a specific intent to constitute the offense. When the code was enacted, the substance and many of the words of this statute were placed in subdivision 3 of section 311, but the introductory words “willfully and lewdly,” which had not appeared in the statute of 1859, were prefixed to them in the manner above stated. This is a material and substantial change, and we must presume that the Legislature intended to change the law accordingly. (Bales v. Superior Court (1942), 21 Cal.2d 17, 21 [129 P.2d 685]; Estate of Broad (1942), 20 Cal.2d 612, 618 [128 P.2d 1]; Whitley v. Superior Court (1941), 18 Cal.2d 75, 79 [113 P.2d 449].)
Respondent argues and the trial court apparently believed that this court gave a different construction to this statute in People v. Fananstein (1944), Cr. A. 1995 (an unpublished decision). That case also involved a prosecution for violation of subdivision 3 of section 311 of the Penal Code, and in the opinion affirming a conviction, this court, after stating one of the defendant’s arguments to be that the evidence was insufficient to show that he lewdly kept obscene writings, papers or books for sale, went on to declare this rule in regard to it: “One who keeps for sale obscene or indecent writings, papers or books, knowing the character thereof, [emphasis now made] acts lewdly in so doing because the sale .of such ‘literature’ tends to demoralize those into whose possession the same may come. (36 C.J. 1035.)” Following this statement, this court said that section 311 should be liberally construed to effectuate its purpose of stopping the circulation of obscene or indecent “literature,” and. that any other interpretation of subdivision 3 “than that here given would have *965 the practical effect of nullifying that subdivision. ’ ’ This is no ruling that a lewd intent need not be proved in order to establish a violation of subdivision 3 of section 311, but rather a holding that the evidence there showed defendant's knowledge of the character of the writings, etc. which he kept for sale, and that from such knowledge a lewd intent might be inferred.
Respondent also cites in support of its contention In re Sekuguchi (1932), 123 Cal.App. 537 [11 P.2d 655], The court there had under review subdivision 3 of section 311 of the Penal Code, and gave it a rather liberal interpretation, setting forth the rules regarding the power of courts to add, change or strike out words in a statute. But the court was not there considering, and did not decide, the question whether the introductory words of section 311 apply to subdivision 3, and in fact the opinion assumes that they do so apply. Nor do the stated rules suggest any reason why interpretation should excise the words of the introduction from this section or any part of it. Indeed, the general rule, as stated in that case, is that this cannot be done, and while some exceptions to this rule are set forth, none of them covers the present case. There is no doubt, ambiguity or uncertainty in the statute as it is written, nor can we say it results in any manifest absurdity needing correction. To be sure, it may somewhat hamper the prosecution in such a ease as this, because of the difficulty of making proof of the defendant’s knowledge of the contents of a book or otherwise showing his intent in selling it. But, on the other hand, the Legislature may have believed that the evils to result from this difficulty were less than those to be anticipated from the possibility that without the questioned words in the statute persons who were ignorant of the true character of a book might nevertheless be convicted of a crime for selling it. At least when the Legislature had the opportunity to choose between these alternatives, it placed in the statute the words requiring an intent.
Where the statute makes a specific intent an element of the offense, such intent must be proved. (People v. Becker (1934); 137 Cal.App. 349, 352 [30 P.2d 562].) Of course, the proof may be, and, on the part of the prosecution in most eases, it is, circumstantial; but, if so, the circumstances must be such as reasonably to justify an inference of the intent. (People v. Snyder (1940), 15 Cal.2d 706, 708 [104 P.2d 639]; *966 People v. Rothrock (1937), 21 Cal.App.2d 116, 119 [68 P.2d 364]; People v. Maciel (1925), 71 Cal.App. 213, 218 [234 P. 877].) Here the facts proved were merely that the book was in stock in the book store owned by one of the defendants and was, on request, sold by the other defendant to a police officer. The' book was introduced in evidence, but it bears no marks or indications of its character on the outside, nor is its title enlightening or even suggestive on the subject. This evidence, without more, is not sufficient to show that defendants “lewdly” sold the book. If it appeared that the defendants knew.the obscene character of the book, this would support an inference that they acted lewdly in selling it, but we find in the record no evidence to this effect. The pamphlets involved in our unpublished decision above mentioned were so printed that their character could be ascertained by merely looking at them, which is not the case here.
The defendant Eastman, who sold the book but did not own the store, was asked by her counsel in substance whether she had any lewd intent in making the sale, and an objection of the prosecution to this question was sustained. This was error. A witness may be examined as to the intent with which he did an act, when that intent is material. (People v. Morley (1928), 89 Cal.App. 451, 457 [265 P. 276]; People v. Brierton (1933), 132 Cal.App. 471, 474 [23 P.2d 63].) This is true even where the defendant is the witness and his intent is an element of the crime charged. (People v. Sheasbey (1927), 82 Cal.App. 459, 464 [255 P. 836], and cases cited.)
It may be that some of the book reviews offered by the defendants were relevant to the question of intent. If it appeared that the reviews commended the book without disclosing its true character—as apparently some of them did—and that the defendants had read such reviews and relied on them, having no more accurate knowledge, in selling the book, these facts would tend to establish a lack of lewd intent. .But we do not attempt to pass on the admissibility of any particular review offered, since other sufficient grounds for a reversal appear.
At the request of the People, the court gave this instruction to the jury: “In a prosecution under Section 311, Sub. 3, of the Penal Code of the State of California, it is not necessary for the People to prove that the defendants acted lewdly in selling, keeping for sale or distributing an obscene *967 or indecent book, but it is only necessary for the People to prove that the defendants wilfully sold, kept for sale or distributed an obscene or indecent book; and if you find from the evidence beyond a reasonable doubt that the defendants, and each of them, wilfully and unlawfully sold, kept for sale or distributed an obscene or indecent book, it will be your duty to find the defendants guilty as charged.” The same theory was carried into other instructions, and the court refused instructions asked by defendants which would have given the jury the proper rule regarding intent. These instructions and refusals of instructions were erroneous for the reasons already given, and on the state of the record here must result in a reversal.
The judgment and order appealed from are reversed, and the cause is remanded for a new trial.
Bishop, J., and Stephens, J., concurred.